UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA GAMBINO,

    Plaintiff,

v.                                       Case No:   6:18-cv-869-Orl-31TBS

CITY OF ST. CLOUD,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint with Prejudice, or Alternatively, Motion to Strike (Doc. 14). Plaintiff has filed her response (Doc. 29). Upon consideration, I respectfully recommend that the motion be **GRANTED, in part**, and **DENIED, in part,** all as set forth herein.

### I. Background

Plaintiff, Laura Gambino, sues her former employer, Defendant, the City of St. Cloud, for damages under the Equal Pay Act of 1963, 29 U.S.C. §206(d) (the "EPA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (the "ADEA"); the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); Chapter 760 of the Florida Statutes, the Florida Civil Rights Act (the "FCRA"); and Chapter 27 of the Osceola County Municipal Code, the Osceola County Human Rights Act (the "OCHRA") (Doc. 1). Plaintiff alleges that she is a fifty-three-year-old female and "the terms, conditions, and privileges of her employment were altered because of her age, gender, or in retaliation for complaining about such alterations." (Doc. 1, ¶ 5). She pleads the following averments common to all counts:

13. Plaintiff worked for Defendant as the Economic Development Director for the City of St. Cloud from approximately October, 2016, until she was wrongfully terminated on June 22, 2017.

14. As a condition of her employment, Plaintiff was required to live within the city limits of St. Cloud.

15. As Economic Development Director, Plaintiff's primary duties and responsibilities included activities such as managing key economic development projects, supervising subordinates responsible for the daily operation of the Community Redevelopment Agency, collecting and analyzing economic, demographic, land use, and other data, for the purpose of conducting economic development activities.

16. Plaintiffs starting salary was $71,550.00.

17. On May 15, 2017, after six months in her position, Plaintiff received an evaluation of her performance from the City Manager, Joseph Helfenberger. Her performance was rated as "outstanding."

18. On June 7, 2017, based on the prior months' performance evaluation, she was given a raise of $18,443.27, retroactive to the date of her performance review. Her new salary was $90,000.00.

19. On June 9, 2017, the City Manager issued a memorandum to the Human Resources Director, Harvey Bisson, stating that "Based on the direction from City Council last night, I have rescinded raises that we discussed this week. The City will proceed with a City-wide salary study, upon approval of the next fiscal budget, and then I will make a recommendation for increased compensation for city employees." A copy of this memorandum was provided to the City Council Member and to Plaintiff. The only raise that was impacted by this memorandum was the one given to Plaintiff.

20. On June 12, 2017, the Mayor of St. Cloud, Nathan Blackwell, sent correspondence to the City Manager disputing that the City Council gave any direction for the rescission of the raise to Plaintiff.

21. On June 20, 2017, the City Manager wrote a letter of recommendation in support of Plaintiffs candidacy for the Florida Redevelopment Association - Redevelopment Administrator Designation, praising her job performance.

22. Less than two days later, on June 22, 2017, Plaintiff was terminated from her position as the Economic Development Director, putatively for "Failure to Satisfactorily Complete the Probation Period."

> The termination letter went on to make several false and defamatory statements about Plaintiff's behavior during her period of employment.
>
> 23. Two days prior to her termination, Plaintiff confirmed an offer made to her by City Management for a promotion to the position of Assistant City Manager, with a corresponding salary increase of over $20,000.00.
>
> 24. Plaintiffs replacement, Chris Robertson, is a younger male with no municipal government experience, was, and is, unqualified for the job. He does, however, have extensive ties to St. Cloud real estate of interest to the city.
>
> 25. Unlike Plaintiff, Mr. Robertson was not required to live within the city limits of St. Cloud.
>
> 26. Mr. Robertson's hiring is the subject of an investigation ordered by the Office of the Mayor, wherein the investigator concluded that it was "far more probable than not" that Councilmember Cooper violated the City Charter by threatening the City Manager with termination if he failed to hire Mr. Robertson.
>
> 27. During the relevant period surrounding Plaintiffs termination, three other city employees were terminated, all of them men. The men all received severance payments from the Defendant. Plaintiff did not receive any severance or even the option for a voluntary separation like the men were.
>
> 28. Plaintiff learned that the salary she'd received as the Economic Development Director was significantly less than less or equally qualified men doing the same or similar job and performing the same or similar job duties and responsibilities.

(Doc. 1, ¶¶ 13-28). Based upon these allegations and others, Plaintiff pleads ten counts of discrimination and retaliation.

Defendant seeks dismissal of the complaint with prejudice, claiming that: (1) the complaint is an impermissible shotgun pleading; (2) the complaint fails to state a claim upon which relief can be granted; (3) Plaintiff's claim for punitive damages should be stricken because such damages are not recoverable against a municipality; (4) Plaintiff failed to exhaust her administrative remedies before pursuing a retaliation claim; (5)

Plaintiff's claim under the OCHRA must fail as the provision relied upon does not provide for relief; and (6) Plaintiff has not established the applicability of the EPA (Doc. 14). Plaintiff denies most (but not all) of these assertions and contends that her complaint is sufficient to meet the federal pleading standard (Doc. 29).

## II. Discussion

### Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. To survive the motion, the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Stating a claim upon which relief may be granted "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" be enough to survive a Rule 12(b)(6) motion to dismiss. Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65. In evaluating a complaint under this standard, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011). Legal conclusions devoid of any factual support are not entitled to an assumption of truth. Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 679).

### Analysis

The motion and response are long on conclusory assertions and short on analysis and citation to applicable law. Instead of a count by count review of the complaint,

Defendant presents its arguments in confusing and haphazard fashion, complicating Court review. For her part, despite a lengthy extension of time to respond to the motion, Plaintiff has filed a mere five-page response, which does not purport to address all of the issues raised. To the extent the arguments presented can be deciphered, they are treated in turn.

Shotgun Pleading

Defendant claims that the complaint is an impermissible "shotgun pleading." A shotgun pleading is one that violates Rule 8(a)(2), FED. R. CIV. P. (requiring a short and plain statement of the claim showing that the pleader is entitled to relief) or Rule 10(b), FED. R. CIV. P. (requiring numbered paragraphs limited to a single set of circumstances), or both. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has explained:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. [ ] The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. [ ] The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. [ ] Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. [ ] The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Weiland, 792 F.3d at 1321-23 (footnotes omitted).

Defendant argues that "[b]y asserting nothing but bare legal conclusions unsupported by allegations of fact, the Complaint is an impermissible shotgun pleading as delineated by the Eleventh Circuit in Weiland." (Doc. 14 at 8). I cannot agree. A complaint comprised of nothing but legal conclusions may be subject to dismissal under the pleading standard, but it is not necessarily a shotgun pleading. And, Plaintiff does plead facts applicable to each separate count. (See Doc. 1, ¶¶ 13-28). While the legal sufficiency of these allegations may be at issue, it is inaccurate to assert that the claims consist of no more than bare legal conclusions without factual allegations. To the extent Defendant complains that the complaint is mis-numbered and therefore confusing, Plaintiff explains that these are typographical errors and offers to amend to correct (Doc. 29 at 3). After review, I do not find the complaint to be subject to dismissal as a shotgun pleading.

Failure to state a claim

Plaintiff alleges that she was discriminated against based on her age and gender. Unfortunately, Defendant does not present its arguments on a count by count basis but appears to blend a variety of objections into a broad contention of "failure to state a claim."[1] Defendant argues that Plaintiff has not stated a claim because "Plaintiff does not allege facts to demonstrate that there [is] a male comparator or male employee that is similarly situated as required to prove a prima facie case of gender/sex discrimination, nor does she provide a comparator employee under the age of 40 to support any claims of age discrimination, or any male that would not be justified in receiving a pay differential under the Equal Pay Act." (Doc. 14 at 2-3). Then Defendant argues the merits,

---

[1] Ironically, in this respect it is a shotgun motion.

contending that a probationary employee is not "similarly situated" to an employee whose employment is no longer probationary; citing the "same actor" inference; taking issue with whether Plaintiff and the comparators were equally situated for purposes of the EPA; and generally challenging the factual accuracy of the allegations. Unpacking the arguments, Defendant broadly asserts that Plaintiff has not adequately pled a cause of action for the state and federal discrimination counts alleged.

    a) Title VII, the FCRA[2] and the ADEA

"Title VII prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). The FCRA is in accord. See FLA. STAT. § 760.10(1)(a) ("It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."). The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). To establish a prima facie case of disparate treatment under Title VII or the FCRA, a plaintiff "must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th

---

[2] Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA. See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (collecting cases).

Cir.1999); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997). To establish a prima facie case for an ADEA violation the plaintiff must show: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and (4) she was replaced by or otherwise lost a position to a younger individual. See Kragor v. Takeda Pharmaceuticals America, Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).

The City argues that "Plaintiff cannot show a prima facie case of age or gender/sex discrimination, because she cannot show that a similarly-situated male employee or employee under 40 was treated more favorably." This contention misses the mark as a plaintiff need not allege a prima facie case of discrimination to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasizing that a prima facie case "is an evidentiary standard, not a pleading requirement"); see also Evans v. Georgia Reg'l Hosp., 850 F.3d 1248, 1253 (11th Cir.), cert. denied, 138 S. Ct. 557, 199 L. Ed.2d 446 (2017) ("A Title VII complaint need not allege facts sufficient to make out a classic prima facie case, but must simply provide enough factual matter to plausibly suggest intentional discrimination."); Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015) (same); Buchanan v. Delta Air Lines, Inc., 727 F. App'x 639, 641 (11th Cir. 2018) ("A complaint asserting employment discrimination under the ADEA need not contain specific facts establishing a prima facie case.").

Applying the correct pleading standard, Plaintiff has alleged her salary and duties, the satisfactory performance of those duties, that shortly after she was given a raise, she was terminated from her position on false grounds as a pretext, she was replaced by a younger male with no municipal government experience, her salary was significantly less

than that of equally or less qualified men doing the same or similar job duties, and she was significantly more qualified than her younger male replacement, yet he was treated more favorably (Doc. 1, ¶¶ 13-28; 38-46, 49-60). Taken as true and construed in Plaintiff's favor (as required in this context), this is enough to plausibly allege intentional age or gender discrimination.[3] Therefore, the motion to dismiss on these grounds should be denied.

    b) Retaliation

As Judge Chappell has observed:

> Before a plaintiff can raise a Title VII claim in federal court, he must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. Litman v. Sec'y, of the Navy, 703 F. App'x 766, 771 (11th Cir. 2017). "The purpose of this exhaustion requirement is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Id. (quoting Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004)). Allegations made to a federal court "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but "allegations of new acts of discrimination are inappropriate." Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018) (quoting Gregory, 355 F.3d at 1279-80).

Short v. Immokalee Water & Sewage Dist., No. 2:18-CV-124-FTM-99CM, 2018 WL 4599719, at *2 (M.D. Fla. Sept. 25, 2018).

Defendant asserts that Plaintiff failed to make a claim of retaliation in her charge of discrimination filed with the EEOC, and the 180, 300 and 365-day-deadlines allotted for her to do so under Federal and State law have expired. As proof, Defendant attaches an exhibit that it claims is the charge of discrimination Plaintiff filed (Doc. 14-1). In response, Plaintiff asserts that, through counsel, she sent correspondence to the EEOC on January

---

[3] To the extent the City disputes the factual accuracy of these allegations, such contentions address the merits of the claim and are best suited to summary judgment or disposition at trial.

11, 2018, "well in advance of the expiration of the 300 and 365 day deadlines," which stated in part, "please be sure that retaliation is included in Ms. Gambino's charges." (Doc. 29-2). The EEOC's Dismissal and Notice of Rights attached to the complaint is dated March 22, 2018 (Doc. 1-1). Plaintiff says she also submitted an additional charge in May 2018 "out of an abundance of caution," which included her claim for retaliation (Doc. 29-3). The FCHR issued a Notice of Dismissal of that charge, as "a duplicate." (Doc. 29-4). None of these exhibits has been properly presented as evidence and the copy of the dismissal attached to the complaint does not include a copy of the charge. Consequently, in this context, I cannot resolve the disputed issue of whether Plaintiff timely presented her retaliation claim.[4] That said, the motion to dismiss the retaliation counts should be granted because Plaintiff has failed to plead sufficient information to plausibly state the basis of any retaliation claim.

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily-protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)). In addition to the allegations incorporated into each count

---

[4] The analysis of a motion to dismiss is usually limited to the four corners of the complaint and any attachments. However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Although courts "routinely consider the EEOC charge when reviewing a motion to dismiss," King-Brown v. Alabama High Sch. Athletic Ass'n, No. CV 17-00232-KD-B, 2018 WL 1056400, at *2 (S.D. Ala. Jan. 30, 2018), report and recommendation adopted, No. CV 17-00232-KD-B, 2018 WL 1053322 (S.D. Ala. Feb. 26, 2018), in this case, the parties disagree about which documents constitute the charge.

- 10 -

quoted above, Plaintiff pleads three counts of retaliation, alleging the same factual basis for all three:

> 63. Plaintiff made various complaints about the discriminatory practices of Defendant.
>
> 64. Defendant failed to take prompt or appropriate corrective action to prevent or remedy the discriminatory conduct leading to Plaintiffs termination.
>
> 65. Plaintiff was participating in a protected activity when she made her complaints about Defendant's discriminatory practices.
>
> 66. The City Manager and the City Councilmembers, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of their duties.

(Doc. 1, ¶¶ 63-66, 90-93, and 22-25).

Construed liberally, these allegations fail to allege sufficient factual matter to state a plausible retaliation claim. Absent from the complaint are any specifics regarding the "various complaints," the adverse action, and any basis to support a causal relationship between the two. As pled, these allegations are "mere labels and conclusions," Twombly, 550 U.S. at 555, and are simply too vague to put Defendant on notice of what act or actions are alleged to constitute retaliation. Consequently, Counts IV, VII, and X should be **dismissed.**

### Punitive Damages

Defendant seeks to strike any allegations of a right to recover punitive damages (Doc. 1, ¶¶ 68, 75, 95, 7 (on Page 16 and in the general requests for relief on pages 15 and 19), because punitive damages for employment discrimination are not available against a municipality. See, e.g., Fla. Stat. § 760.11(5) ("Notwithstanding the above, the state and its agencies and subdivisions shall not be liable for punitive damages."); 42 U.S.C. § 1981a(b)(1) (exempting "a government, government agency or political

subdivision."). Plaintiff offers no argument in opposition, and I find that the motion to strike all allegations and claims regarding punitive damages should therefore be **granted.**

### OCHRA

Defendant seeks dismissal of Counts VIII-X regarding the OCHRA, claiming that Plaintiff has not alleged any viable basis for the Court's jurisdiction, and even if the OCHRA applies, it is pre-empted by the FCHRA, ADEA, and Title VII claims. Defendant also notes that Plaintiff referenced Chapter 21, which has to do with a library district not shown to be relevant here. Plaintiff agrees that the OCHRA is preempted by the FCHRA, the ADEA, and Title VII, but only "to the extent that it may conflict with those laws." She argues that Defendant has not identified which parts of the OCHRA conflict with Florida or federal law. Plaintiff also states that her citation to Chapter 21 is a typographical error as she inadvertently identified the OCHRA as Chapter 21 instead of Chapter 27. She offers to amend.

Absent from the parties' arguments is even a single case citation, quotation, or detailed reference (let alone analysis) of the OCHRA provisions at issue. Neither parties' brief complies with our local rule requiring that a memorandum of legal authority be provided in support of the precise relief requested or opposed. See Local Rule 3.01(a) and (b). The half-hearted and conclusory argument presented by Defendant is not enough to join the issue for resolution. That said, Plaintiff has offered to amend and I find that she should be given leave to do so. Accordingly, Counts VIII through X should be **dismissed.**

### Equal Pay Act

The final ground for dismissal is that the EPA count (Count I) fails to state a cause of action. A plaintiff establishes a prima facie case under the EPA if she shows that her

employer paid 'different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which [we]re performed under similar working conditions.'" Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362-63 (11th Cir. 2018) (quoting Irby v. Bittick, 44 F.3d 949, 954 (11th Cir. 1995) (internal quotation marks omitted)). Defendant argues that there are no factual allegations that support a contention that it meets the definition of an "establishment" as defined by the EPA, or that any provisions of the EPA apply and were violated by it. In cursory fashion, Plaintiff disputes this contention.

The City's argument regarding the definition of an "establishment" is, at best, confusing. It states:

> Even if Plaintiff could allege a factual basis to support her contention that the Equal Pay Act applies generally to the City, as she has alleged no facts to support the legal conclusion the City meets the definition of an "establishment" as defined in the Equal Pay Act, or that the Equal Pay Act otherwise applies to the relationship between the parties. In fact, the only factual evidence is that Plaintiff worked for the City as a probationary Economic Development Director and was discharged from her employment while still on probationary status. American Federation of State, County and Municipal Employees (AFSCME); et al v. County of Nassau, 609 F. Supp. 695, 704 (E.D. N.Y. 1985) (Some of Plaintiffs' claims under the Equal Pay Act were due to their failure to allege any facts to demonstrate the "establishment" element of the Equal Pay Act); Meeks v. Computer Associates Int'l, 15 F.3d 1013, (11th Cir. 1994) (Multiple offices may be treated as single "establishment," for purposes of Equal Pay Act purposes, but it is presumed that multiple offices are not a single establishment unless unusual circumstances are demonstrated); See also Freeman v. Key Largo Volunteer Fire and Rescue Dept., Inc., 841 F. Supp.2d 1274 (S.D. Fla. 2012) (Individuals seeking compensation pursuant to the FLSA bear the initial burden of proving that an employer employee relationship exists).

(Doc. 14 at 12-13). To the extent Defendant is claiming that it is exempt from the EPA, the cases it cites (and numerous cases *not* cited) do not support this argument. The EPA provides:

> (d) Prohibition of sex discrimination
>
> (1) No **employer** having employees subject to any provisions of this section shall discriminate, **within any establishment in which such employees are employed**, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (emphasis supplied). "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and "includes a public agency." 29 U.S.C. § 203(d). Plaintiff has alleged that Defendant was her employer as defined by law (Doc. 1, ¶ 6).

"Establishment" is not defined in the EPA but, according to regulation, "[i]t refers to a distinct physical place of business rather than to an entire business or "enterprise" which may include several separate places of business." 29 C.F.R. § 1620.9(a). Note, though, the Eleventh Circuit's recognition that:

> Under appropriate circumstances, multiple offices may constitute a single establishment for EPA purposes. See, e.g., Marshall v. Dallas Indep. Sch. Dist., 605 F.2d 191, 194 (5th Cir.1979) (Wisdom, J.) (school district with 182 schools is a single establishment for EPA purposes); 29 C.F.R. § 1620.9(b) (1993) ("[U]nusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions.").

Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1017 (11th Cir. 1994). Defendant presents no comprehensible argument as to why it does not "meet the definition of an establishment" as so defined.

I am likewise not persuaded that Plaintiff's EPA claim must be dismissed because she did not allege that males with a comparable job were given a favorable pay differential. Plaintiff has pled her salary and duties, the satisfactory performance of those duties, that shortly after she was given a raise she was terminated from her position on false grounds as a pretext, she was replaced by a younger male with no municipal government experience, her salary was significantly less than men who were equally or less qualified to do the same or similar job duties, and she was significantly more qualified than her younger male replacement yet he was treated more favorably (Doc. 1, ¶¶ 13-28; 38-46, 49-60). Plaintiff alleges a "systemic pattern and practice of equal pay violations." (Doc. 1, ¶31) and that she "learned that the salary she'd received as the Economic Development Director was significantly less than less or equally qualified men doing the same or similar job and performing the same or similar job duties and responsibilities." (Doc. 1, ¶ 28). Plaintiff also alleges that Defendant paid her a salary "less than similarly situated male employees in jobs requiring substantially the same skill, effort, and responsibility, which jobs are working in the same or substantially similar conditions" and "supervisory personnel of Defendant intentionally subjected Plaintiff to unequal and discriminatory pay based upon gender that altered the conditions of her employment." (Id., ¶¶33, 34). While Defendant argues that "Plaintiff has not and cannot identify a single male employee that was in a substantially similar position, with respect to seniority, working conditions, work environment, hazards, job duties and responsibility,"

and purports to discuss the job duties of "the new City Manager, police and fire chiefs,"[5] these are questions of proof, not pleading. For present purposes, the complaint has adequately met the pleading standard for this Count. The motion to dismiss this Count should be denied.

Conclusion

Plaintiff's complaint is not a shotgun pleading, but neither is it a model of clarity. And, any finding that certain claims withstand dismissal is not necessarily a reflection of the strength of those claims, but the weakness of the briefing. In any event, because Plaintiff acknowledges some defects which are amenable to correction, I recommend that she be given the opportunity to do so.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the motion to dismiss or strike be disposed of as follows:

(1) Count IV (Retaliation - Title VII); Count VII (Retaliation - FCRA); and Counts VIII, IX and X (OCHRA) be **dismissed, without prejudice;**

(2) All claims and allegations regarding punitive damages be **STRICKEN**; and

(3) Plaintiff be given 14 days from any Order of dismissal in which to file an amended complaint.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual

---

[5] The City admits Plaintiff did not allege that these individuals are comparators (Doc. 14 at 14).

- 16 -

finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

    **RESPECTFULLY RECOMMENDED** at Orlando, Florida on October 11, 2018.

                                              THOMAS B. SMITH
                                              United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record